By the Court—Hoffman, J.
The defendants cannot, in my opinion, under the decision in Stalker v. McDonald, (6 Hill, *199 96,) even as modified or explained in White v. The Springfield Bank, (3 Sandf. Sup. C. R., 222,) be treated as purchasers for value, so as to hold the acceptance or its proceeds against a real owner, who had never parted with his property in it. The defendants did not, when they took the acceptance, by any unequivocal act, treat it as extinguishing so much of the debt of the Company. They only credited the Company in general account, upon a previous indebtedness, after they had collected the amount. It was the proceeds which they so applied. (Youngs v. Lee, 2 Kern., 555.)
The case, therefore, appears to depend upon the point chiefly contested by counsel, viz.: Whether the Ohio Trust Company was not, in point of law, the real owner of the draft, and as such transferred a good title to the defendants. The first conclusion of law of the learned Judge states the point, and contains the proposition that the draft was actually the property of such Company.
On the 20th of August the draft was received; on the same day it was presented and accepted. It was never passed to the credit of Lyell until after this action was commenced.
On the 24th of August it was delivered to the defendants, and on the 26th was paid.
This dealing with the acceptance by the Company may have made it responsible to Lyell for the amount on the 24th of August, as absolutely as if they had received and credited that amount; yet it does not necessarily follow that the right to pursue the acceptance is lost by a right to recover from the Company.
Again, it is very difficult to conclude from the facts in this case, th.at the Company was bound to credit even an acceptance, in account with Lyell, so as to require it to honor his drafts before its payment. “ He had been in the habit of remitting in this way.”. “ He was a large depositor with the Company of money and bills.” “ This draft was sent to the Company in the usual course of business.” “ He was to be allowed interest at four per cent on his average balances.” He had a cash balance to his credit on the 24th of August of over $108,000. He proceeds to draw upon this during the month of September, to *200 the amount of over $98,000, and his drafts are paid at the office in Cincinnati'.
I find it difficult to concur with the learned Judge, “ that Lyell was entitled to have a credit in account for this draft on its receipt by the Company.” The habit of remitting and depositing money and bills does not necessarily imply this. The habit of business is as consistent with meeting drafts on actual funds, as upon acceptances or securities unpaid; and there is no previous established' habit proven to define its nature. The allowance of interest would naturally be on actual cash balances only.
In the decision of Clark v. The Merchants' Bank, (2 Comst., 880,) no fact was considered as of higher importance than this: “ Whether the draft there in question was to be credited to the plaintiff, when received by Smith & Company, whether "collected or not ?”
When that draft was sent it was accompanied with notes to the amount of $2,496.08 expressly for collection, and with $17,975.62 (including the $7,000 draft in question) in notes, bank bills, &c., per account No. 1. The amount was $20,471.70, and with the remittances, advice was given of drafts on the fund for $20,832.26. “As the mode of dealing had been continued for years, and was perfectly understood by all parties, the plaintiffs had a right to draw against the funds remitted, and Smith & Co. were bound to accept. The whole fund was, by the course of dealing, treated as cash.”
Again, it is observed by the Court “ that the case is much stronger than that of a customer with a banker. The parties were exchange brokers, mutual correspondents, receiving funds for and making drafts upon each other. Unquestionably it was their intention to keep each other in funds to answer the bills drawn by them respectively. Bqt in case the paper transmitted should be unavailable, a principal object of the arrangement was to prevent these drafts being returned dishonored, by making it the duty of the correspondent to accept and pay notwitstanding." No such mutual account and dealing is found in the present case.
The authorities cited by Justice Sandford, when Clark v. The Merchants' Bank was in this Court, (1 Sandf., 498,) show how clearly the rule is that the property in notes or bills, transmitted to an agent or banker, vests in him only when he has *201 become absolutely responsible for the amount to his customer. Unconditional liability and ownership become correlative. How the former is made out, is matter of evidence; but the principle and good sense of the law seems to be that an owner does not lose his property, the possession of which is committed to another, unless he has chosen to constitute that other his debtor for it, and that other has assumed the liability, and both facts are satisfactorily established, or unless an authority is sufficiently established under which the holder was entitled to use the security for his own business purposes, and thus confer a valid title upon another, even for an antecedent debt.
In ex parte Barkworth in re Harrison, (4 Jurist, N. S., 547,) the question was as to short bills, and the Court say that the point was whether there had been any agreement between the customer and the bankrupt, that the bills should be the absolute property of the bankers. The banker was in the habit of crediting unpaid bills transmitted to him by the customer directly as cash, not carrying them short. But there was no evidence that the customer knew of this or drew upon the fund on the ground of such credit. Upon the bankruptcy of the banker, there were bills in his hands of the customer not due, and a cash balance also in his favor. It was held that the customer had a right to the bills as against the assignees. There was not evidence to show that the bills constituted an immediate debt from the banker to the customer.
The present case does not in my opinion fall within the liberal rule of The Bank of the Metropolis v. The New England Bank, (1 How. U. S. R., 240; 6 id., 212,) but is governed by the principle of the case of Lawrence v. The Stonington Bank. (6 Conn. R., 521.)
The Ohio Company did not so place themselves in the situation of an absolute debtor to Lyell, as to make themselves owners of the draft. There is no evidence to prove that Lyell had given any authority for the use of his securities transmitted to the Company for their own purposes.
There is no course of business or dealing proven from which such a power can be deduced. The Company took the draft for collection mereljr. It was Lyell’s property in their hands when they transferred it to the defendants, and the defendants, upon *202 the facts as to such transfer, acquired no better title than the Company possessed.
We think that the judgment must be reversed and a new trial had, with costs to abide the event.
Ordered accordingly.