By the Court—Bosworth, Ch. J.
On the facts, which the evidence will justify a Judge or Jury in finding, we think no discrimination, favorable to the plaintiffs, can be made between this case and Warner v. Lee, (2 Seld., 144,) and Scott v. The Ocean Bank, (5 Bosw., 192, and 23 N. Y. R., 289.)
In Warner v. Lee, John T. Smith & Co., with whom the plaintiffs had' deposited for collection a note owned by them, made by Osborn & Whallon, sent it in a letter to the defendant, a banker, which letter stated that it was “ inclosed for collection.” In the present case, the indors *342 ment to the plaintiffs stated that it was “ for collection.” The letter inclosing it (and another draft) stated that they were inclosed “ for collection and credit.” This, in the light of the evidence'given, means that the draft for $77.31 was inclosed to be credited to Josiah Lee & Co., and the one for $1,100, for collection. The small one was paid at sight, and was credited to Josiah Lee & Co. The large one — the one in question—was entered on the plaintiffs’ blotter as received for collection, and was never otherwise credited to Josiah Lee & Co.
In Warner v. Lee, the plaintiffs had received.no advances from John T. Smith & Co. The present defendants received none from Josiah Lee & Co.
In Warner v. Lee, Smith & Co. were largely engaged in making collections of notes for merchants in Sew York, and the defendant was aware of that fact. In the present case, Lee & Co. “ were in the habit of receiving paper from other parties, and transmitting it for collection.” One of the plaintiffs so testifies, and, of course, he was aware of that fact.
In each case the accruing balances were collected in a similar manner.
In Warner v. Lee, the Beferee did not find that any advances were made by defendant to John T. Smith & Co., on the credit of the' note there in question. In the present case, the Judge has found, that the plaintiffs made advances to Josiah Lee & Co., on the credit of the acceptance in question. We shall attempt to show that this finding is not warranted by the evidence. Assuming, for the present, that this is susceptible of demonstration, then there is no difference between the facts of these two cases, except that, in Warner v. Lee, the note there in question was collected, and the proceeds received by the defendant, before any formal notice was given to him that the note was not the property of Smith & Co.; while, in the present case, the plaintiffs did not collect the acceptance in question, and had formal notice before this suit was commenced, that it was the property of the defendants.
*343 In Warner v. Lee, the Court said, that “when the defendant received this note, he had notice, from its indorsement, from the course of business of Smith & Co., with which he was acquainted, and from the letter which inclosed the note to him, that it was placed in their hands for collection only, on account of the owners, the plaintiffs . in this suit. Under these circumstances, if he had made advances upon account of it, he could not have held the note nor its proceeds, against the plaintiffs. (Clark v. Merchants' Bank, 2 Comst., 380.)”
In the present case, the plaintiff had the same notice, except such as the indorsement furnished. In Warner v. Lee, the plaintiffs indorsed the note in blank on delivering it to Smith & Co., and they filled up the blank indorsement with the defendant’s name; whereby it was, in form, specially indorsed by the plaintiffs to the defendant. In the present case, the blank indorsement of the defendants was left as they wrote it, and Josiah Lee & Co. wrote under it a special indorsement by themselves to the plaintiffs, in terms stating it was for collection. The present plaintiffs had notice, therefore, that Lee & Co. had received it for collection, that they sent it for collection for the owners; and the natural inference would be that the payees were the owners, it being indorsed only by them, and by Josiah Lee & Co. Arnold v. Clark, (1 Saudf. S. C. R., 491,) supports these views. If it be thought that the decision in Warner v. Lee conflicts with that in The Bank of the Metropolis v. The New England Bank, (1 How. U. S. R., 234,) it would, nevertheless, be our duty to follow it, it being the decision of the Court of last resort of this State, and controlling upon us. The latter case was cited in Warner v. Lee, (2 Seld., 146,) and of course was not overlooked.
In Clark v. The Merchants’ Bank, (2 Comst., 380,) the Court treated the material and controlling question as being, “ whether the bill in question was transmitted to Smith & Co., for collection merely, or was to be credited to the plaintiffs when received by the former, whether *344 collected or not.” (Id.) And to complete the statement of the material elements entering into the question," Gar-direr, J., added : “As the bill was indorsed in blank by the plaintiffs, the legal title passed to Smith & Co. prima facie, and the plaintiffs must establish the fact that it was indorsed and forwarded for the purpose of collection.”
In the present case, the plaintiffs have proved by evidence which is uncontradicted, that Miller, Cloud & Miller deposited the bill with Josiah Lee & Co. for collection; that the latter indorsed it specially to the present plaintiffs, and stated in the indorsement itself that they indorsed it to the plaintiff's for collection, and that the plaintiffs, on receiving it, entered it in their books as having been received for collection, and, by letter to Josiah Lee & Co.» informed them that they had entered it for collection.
In Clark v. The Merchants’ Bank, (supra,) Gardener, , J., discusses the evidence therein, as to the classes of funds remitted, and came to the conclusion that one class was remitted to be credited as cash when received, and to be drawn against, whether paid or not, at the time of so drawing; and that another class was remitted for collection, and was not to be credited or drawn against, until actually paid.
■ As to the class which was to be credited as cash when received, the Court held that the title passed to John T. Smith & Go,, on their reception of the same, and that their application of the proceeds to the payment of their own debt, could not be questioned in a suit against creditors (of John T. Smith & Co.) receiving "them in good faith.
The error of the Court below was stated to consist in the assumption “ that nothing went into account properly” until collected in the course of business, (or in other words that nothing was to be credited as cash wheii received.) (Id., 385.) Gardener, J., summarily states the position of the parties, inter se, with reference to the different classes of remittances, thus: “ Eor the first class they were to be credited, with the right to draw upon their correspondents; as to the second and third, the Few York *345 firm were the agents of the plaintiff's, and had no other interest in, and control over, the assets, than such as was necessary to the discharge of their agency.” Id., 385.
In Scott v. The Ocean Bank, (5 Bosw., 192, and 23 N. Y. R., 289,) the Court held, that:
1. The property in notes or bills transmitted to a banker by his customer, to be credited the latter, vests in the- banker only when he has become absolutely responsible for the amount to the depositor.
2. Such an obligation, previous to the collection of the bill, can only be established by a contract to be expressly proved, or inferred from an unequivocal course of dealing.
That case, in all of its material facts, bears a close resemblance to the one before us. And the Court of Appeals says: “ When, therefore, it appears that the bill in question was retained in the possession of the company, (the party to whom it was sent for collection,) after its acceptance, and that no credit had been given for it at the time it was passed to the defendants, and when nothing is disclosed in the whole course of dealings between the parties to show that any bill was ever credited or agreed to be credited in account, before its collection, or that By ell (the remitter) ever drew or was entitled to draw on the company, or that it was bound to accept drafts otherwise than upon and for funds actually received in cash, it must be considered that the company, at the time of the transfer, stood in the relation of agents for its collection merely.” In that case, the defendants received the bill from the company to secure a pre-existing indebtedness, and credited its proceeds to the company after it was paid, and they were held liable to the plaintiff for its amount.
If, therefore, it is clear upon the evidence that the present plaintiffs did not, and were not under any obligation to credit the bill in question to Josiah Lee & Go., when received, and that there was no agreement or understanding between them that remittances for collection, or a delay to draw for cash balances, was to be based upon or influenced by the consideration of holding paper sent for *346 collection and not matured, then it will follow that the judgméut in this case is in conflict with Warner v. Lee, and Scott v. The Ocean Bank, (supra.)
With reference to this question, it may be observed, first, that the learned Judge who tried this cause states in his opinion “ that the only ground upon which the plaintiff’s claim, can rest, is a mutual agreement between themselves and Josiah Lee & Co., that all remittances, made by either to the other, should be considered as made upon the faith of any prior remittances by the latter to the former, unless notice was given of the interest of others in the paper first remittedand, second, that the learned Judge did not find as a fact that any such agreement was ever made.
There is no .evidence that any express agreeuient to that effect was ever made. And we think_ it quite clear that no such agreement can be inferred from the course of dealing between those parties.
Charles B. Hoffman, one of the plaintiffs, testified as to the course of dealing between his firm of Josiah Lee & Co., thus: “We remitted to them, and they to us; they kept an account with us, and we with them ; they drew upon us, and we upon them; sent paper for collection, and so on;' their remittances to us, if at sight, were collected at once and passed to, their credit; the same course was pursued with the paper we sent them.” That the question whether the plaintiffs “were entitled to draw as against remittances for collection before their maturity,” “never came up;” that they never did it, nor had occasion to do it; and that he does not remember that his firm ever drew “ otherwise than against balances ” of collections actually made.
The only circumstances furnishing any evidence of any exception to this, as the uniform course of business, is in the testimony of Mr. Hoffman, to the effect' that he remembered “one insta¡nce where we (his firm) paid a large overdraft by them,” (Jqsiah Lee & Co.) By overdraft, as here spoken of, we understand a draft for a *347 larger amount than the cash balance then standing to the credit of Josiah Lee & Co. Mr. Hoffman testifies, that neither firm was “ ever under obligation to pay any such draft,” and that he thinks there were two or three instances of overdrafts by Josiah Lee & Co.
In opposition to this exceptional transaction, and in support of the understanding being .in accordance with that indicated by the usual and common course of them business, is the fact that bills on time, when received, were entered in the books of the plaintiffs as having been received for collection, and were never otherwise credited, until actually collected; that the bill in question was sent, entered, and by plaintiffs’ letter is admitted to have been received, for collection, and never was otherwise credited-to Josiah Lee & Co.
This evidence.does not in any manner justify the finding of such an agreement as the Court at Special Term held it essential for the plaintiffs to establish in order to recover; nor' does it furnish any evidence of an obligation on the part of the plaintiffs, to give credit to Josiah Lee & Co. for it, until actually paid; or of any assent on their part that it, or other bills received under like circumstances, should be held by the plaintiffs as security for remittances subsequently made by them, or for the payment of any cash balance in their favor, that might then happen to exist, or might subsequently accrue.
Under such circumstances, evidence by. Mr. Hoffman, “ that we (his firm) always took into account the paper that Ave had on hand, in remitting for collection or drawing doAvn our balances with them, at least we did for several months,” should not be allowed any weight.
The answer imports that this mental operation to which he testifies, was of late occurrence and short duration; there is no pretense that it had been disclosed to- Josiah Lee & Co., or was authorize"! or suspected by them, and so long as it is essential to a valid agreement that there should be at least two parties to it, evidence of what the plaintiffs “ took into account or consideration,” or “ looked *348 to very closely and relied upon,” in making remittances or delaying to draw cash balances, ■ should be disregarded when it is clear that it was unauthorized, and that Josiah Lee & Co. had not the slightest reason to suspect anything of the kind.
We think, therefore, that no discrimination favorable to the plaintiffs, can be made between this case and Warner v. Lee, and Scott v. The Ocean Bank, (supra;) that on the evidence, it is clear that the plaintiffs received the bill for collection, and knowing that Josiah Lee & Co., received and forwarded to them for collection, paper belonging to third persons, as well as paper owned by themselves; that Lee & Co. were not entitled to be credited with the bill until actually collected; and that there is no evidence justi- • fying the claim of a mutual agreement or understanding that remittances for collection by either, were made on the faith and security of paper in their hands, not matured and previously' received for the like purpose, from the house to which such remittances were made.
We do not deem it material or useful to attempt to discriminate between The Bank of the Metropolis v. The New England Bank, and Warner v. Lee, or Scott v. The Ocean Bank, (supra) If it be supposed that no material difference exists, it is none the less our duty to conform our decision to the law, as declared by the Court of dernier resort of this State.
It is not to be denied, however much it is to be regretted, that there is an apparent conflict between the Courts of this and other States, as to the circumstances sufficient to constitute an indorser of paper a hona fide holder for value, so as to exclude the equities of third persons, or defenses that could be made in a suit between the original parties. (Stalker v.McDonald, 6 Hill, 93; Warner v. Lee; Scott v. The Ocean Bank, supra; Swift v. Tyson, 16 Peters, 1; Le Breton v. Pierce, vol. 9, Am. L. R., 737, and note thereto, in vol. 1, Id., N. S., p. 35.)
It may be observed, however, that the head note in Swift v. Tyson, enunciates no rule in conflict with the *349 decisions in this State, and if the fact was proved in that case, (as asserted in the argument of Mr. Fessenden,) viz.: “ That on receiving the acceptance, he (the plaintiff) had given up the note of Norton & Keith, which had been indorsed by one Child,” the decision is in harmony with those of this State.
The learned author of the note upon Le Breton v. Pierce, (1 Am. L. R., N. S., p. 38,) states that “ it has always seemed to us that most of the controversy upon this subject has grown out of the different sense in which the terms are understood. If the term ‘ collateral ’ is understood to import that the bills thus held are not taken on account of the existing debt, but only to be held until due, and if paid, tire amount to be applied, and in the meantime the creditor assumes no responsibility in regard to them, except as the mere agent of the debtor for collection, there could be no ground of claim that any property passed, or that existing equities in former parties were extinguished.”
In The Bank of the Metropolis v. The Bank of New England, (supra,) the Court says: “ There does not, indeed, appear to be any express agreement that those balances should not be immediately drawn for, but it may be implied, from the manner in which the business was conducted; and if the accounts show that it was their practice and understanding to allow them to stand and await the collection of the paper remitted, the rights of the parties are the same as if there had been a positive and express agreement.” This seems to hold that either an express agreement, or one justly inferable from competent evidence, of the actual understanding of the parties, of the character stated, would make a holder of bills, received under that agreement, a holder for value to the extent of any balance due to him.
This may be conceded to be law, and yet, if we have taken a correct view of the evidence in the present case, and of its legal effect, the plaintiffs .have failed to bring themselves within this rule. They have not shown an express agreement of this character; they have not fur *350 nished any evidence that it was their practice, or the understanding between them and Josiah Lee & Go., that cash balances should stand and await the collection of paper remitted to the party in whose favor a balance might exist.
The judgment must be reversed and a new*trial granted, with costs to abide the event.
Ordered accordingly.